UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHERIE C. PIERCE

       Plaintiff,                  CIVIL ACTION NO. 06-CV-10748-DT

     vs.                            DISTRICT JUDGE MARIANNE O. BATTANI

COMMISSIONER OF           MAGISTRATE JUDGE MONA K. MAJZOUB
SOCIAL SECURITY,

       Defendant.
_____/

### REPORT AND RECOMMENDATION

I. **RECOMMENDATION**

This Court recommends that Defendant's Motion for Summary Judgment be **GRANTED** (Docket # 13), that Plaintiff's Motion for Summary Judgment be **DENIED** (Docket # 8), and that Plaintiff's complaint be **DISMISSED.**

II. **PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence.

Plaintiff Cherie Pierce filed an application for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) in October 2003. (Tr. 48-50, 152-53). She alleged she had

been disabled since July 21, 2003 due to fibromyalgia by her family physician. *Id.* Plaintiff's claims were initially denied by a notice letter dated February 19, 2004. (Tr. 39-44, 155-59). Plaintiff sought a review hearing before an Administrative Law Judge (ALJ). (Tr. 45-47). A hearing took place before ALJ Jerome B. Blum on January 24, 2005. (Tr. 187-208). Plaintiff was represented by an attorney at the hearing. (Tr. 37-38, 187-88). The ALJ denied Plaintiff's claims in an opinion issued on May 20, 2005. (Tr. 12-19). The Appeals Council denied review of the ALJ's decision on January 6, 2006 and the ALJ's decision is now the final decision of the Commissioner. (Tr. 1-8). Plaintiff appealed the denial of her claims to this Court, and both parties have filed motions for summary judgment.

### III.   MEDICAL HISTORY

Plaintiff was diagnosed with fibromyalgia in February 2003. (Tr. 141). Treatment records indicate that Plaintiff was prescribed medication for her reported pain. She was also advised to stop smoking, lose weight, and drink plenty of liquids. The records further reveal that Plaintiff failed to show up for several appointments between April 2003 and December 2003. She did not follow up with all recommended medical procedures due to a reported lack of insurance and financial difficulties. (Tr. 141-43). However, Plaintiff was often given refills and samples of her medication. (Tr. 142-43). Plaintiff's reported pain continued in October and November 2003. Her doctor advised her to secure insurance or other financial help. (Tr. 143).

In January 2004 Plaintiff received Medicaid and began a new treatment relationship. (Tr. 145). A medical report indicates that Plaintiff was taking Flexeril twice a day for her pain. *Id.*

The examining physician noted that Plaintiff moaned, groaned, and grimaced while walking around the examination room and while getting onto the examination table. *Id.* The physician also noted that Plaintiff "may be mildly depressed." *Id.*

A Psychiatric Review Technique ("PRT") form was thereafter completed by a DDS psychologist or psychiatrist in January 2004. The doctor concluded that Plaintiff's mental impairments were not severe. (Tr. 92). Dr. P. Baddigam, a board certified psychiatrist, also examined Plaintiff in January 2004. Dr. Baddigam did not diagnose Plaintiff with any mental impairment. He assigned her a Global Assessment of Functioning ("GAF") score of 80.[1] Plaintiff's prognosis was fair. (Tr. 118-21).

Dr. S. Obri, an internist, performed a consultative physical examination of Plaintiff in January 2004. (Tr. 124-26). Plaintiff told Dr. Obri that she was not taking any pain medication because she could not afford it but that she was taking a muscle relaxer. She also stated that her tests for autoimmune diseases had been negative. (Tr. 124). Upon examination, Dr. Obri reported that Plaintiff did not have any edema in her extremities, her reflexes were normal, and her gait and sensation were intact. Plaintiff was alert, awake and oriented. Her straight leg

---

[1] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed., text rev. 2000) at 32-34 ("DSM-IV"). It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* A GAF score of 80 means that Plaintiff had no more than a slight impairment in social, occupational, or school functioning. *See id.*

raising test was negative. She was also able to squat and stand up from the squatting position but Plaintiff indicated that this caused pain all over her body. (Tr. 125-26).

In February 2004 a state agency physician reviewed Plaintiff's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment form. The physician concluded that Plaintiff is able to perform medium work[2] and can stand/walk/sit for about 6 hours out of an 8-hour workday. He also opined that Plaintiff can occasionally climb, balance, stoop, kneel, crouch, and crawl. The physician deemed Plaintiff to be only partially credible and noted that Plaintiff's reported symptoms were not consistent with her medically determinable impairments. (Tr. 83-90).

Dr. Sosa Kocheril confirmed Plaintiff's diagnosis of fibromylagia in April 2004. Dr. Kocheril's report notes that Plaintiff was taking Darvocet as needed and Flexeril but that Plaintiff reported that her medication did not help with her fibromylagia. An examination showed that Plaintiff had tenderness in her soft tissues and joints with focal tender points in more than 11 out of 18 places, indicative of fibromyalgia. Dr. Kocheril also noted that there was no specific active synovitis, inflammation, tenderness, erythema, or effusion in a specific joint. There were no focal neurological deficits. Plaintiff had normal reflexes with strength at 5/5, intact sensation, and an ability to tandem walk. Dr. Kocheril recommended that Plaintiff lose weight and try stretching exercises. (Tr. 150-51). She also ordered various tests, including x-

---

[2] The regulations define medium work as work that "involves lifting of no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 416.967(c).

rays of Plaintiff's hands, feet, SI joint, and cervical spine, systemic inflammatory markers, autoantibodies, SPEP, and UPEP. *Id.*

In November 2004 Plaintiff reported to Dr. Joyce Leon that she was in pain but that she was not taking any of her prescribed medication. Dr. Leon noted that Plaintiff should resume Darvocet and begin Fluoxetine.[3] A sleeping aid would also be considered in the future. Dr. Leon referred Plaintiff for an EMG test and bone scan. Plaintiff had previously cancelled these tests due to transportation issues. Dr. Leon advised Plaintiff that she was eligible for transportation as a Medicaid patient. Dr. Leon also strongly recommended a re-referral to rheumatology.    (Tr. 146).

## IV.   HEARING TESTIMONY

### A.   Plaintiff's Testimony

Plaintiff testified that she was born in April 1973 and has a twelfth grade education. (Tr. 190). She told the ALJ that she cannot work because she hurts from head to toe, cannot stand for a long period of time, or sit without hurting. She also testified that the pain has caused her depression. (Tr. 191). She informed the ALJ that she cannot perform any of her past work due to her pain and problems with meeting the jobs' requirements for lifting, standing, sitting, bending, and walking. (Tr. 191, 193-96, 203-04). According to Plaintiff,

---

[3] Darvocet is a narcotic drug indicated for relief of mild to moderate pain. *Physicians' Desk Reference* 3504 (57th ed. 2003). Fluoxetine is used to treat depression. *Welch v. Barnhart*, 355 F. Supp. 2d 1008, 1012 fn. 9 (E.D. Mo. 2005).

her pain level varies from day-to-day and ranges from a level 4 to 8 on a scale of 10. She stated that she has really bad days about three or four times a week, which renders her virtually bed ridden. On those days, Plaintiff's mother and neighbor help her. (Tr. 197).

Plaintiff also testified about her treatment for fibromyalgia. She stated that her treating physician is Dr. Leon and that Dr. Leon had prescribed Darvocet for the pain but that the medication did not help. She stated that: (1) no other pain medication had been prescribed; (2) she does not take any medication for her arthritis, but does for her depression; (3) Dr. Leon had not recommended any steroid injections or epidurals for her pain. (Tr. 201-03). She is not being treated by a psychiatrist or psychologist. (Tr. 202). Plaintiff also admitted that Dr. Leon had advised her to lose weight but that Dr. Leon did not mention that the weight was causing pressure on Plaintiff's joints. (Tr. 202). Plaintiff further testified that it is absolutely necessary for her to lay down during the day and that she does not sleep well at night due to pain in her body. (Tr. 196-97).

When asked about her daily activities, Plaintiff testified that on a normal day, she wakes up, takes her medication, gets her son up for school, takes her son to school, comes home to rest before trying to do some house cleaning, and eventually falls asleep for about an hour and a half. (Tr. 191). She rests by sitting in her recliner with her feet elevated in order to relieve her back pain. (Tr. 192). She does not watch television, go to church or out to dinner, or read newspapers, magazines or books. She does, however, read over her son's homework. She further testified that she can barely grocery shop and will do so for only

about 10 to 15 minutes and that she can only carry one or two grocery bags from the car to the house. (Tr. 192-93).

    B.    <u>Vocational Expert's Testimony</u>

Elizabeth Pasikowski, a certified rehabilitation counselor, testified as a vocational expert at the hearing. (Tr. 204-07). The ALJ asked Ms. Pasikowski about the type and number of jobs available in Michigan for a hypothetical individual of Plaintiff's age, education, and work experience[4] and who has the RFC to perform unskilled, sedentary service work. Ms. Pasikowski testified that qualifying jobs would include: (1) office clerk positions totaling 4,200 in Detroit and 8,400 in Michigan; (2) video surveillance monitor positions totaling 1,500 in Detroit and 3,000 in Michigan; and (3) information clerk positions totaling 1,400 in Detroit and 2,800 in Michigan (Tr. 205-06). Ms. Pasikowski also testified that these jobs would be prohibited for the same hypothetical individual if she needed to lay down during the day for an hour or two. (Tr. 207).

## IV.    THE ALJ'S FINDINGS

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of July 21, 2003. (Tr. 15, 17). He further found that Plaintiff's impairments of fibromyalgia and hypertension are severe but that they do not meet or

---

[4] Ms. Pasikowski also testified to the following classifications for Plaintiff's prior work: (1) certified nurse's aide involved semi-skilled, medium work; (2) babysitter, cashier, and photo lab technician required unskilled, light work; (3) cook involved unskilled, medium work; and (4) medical supply clerk required unskilled, sedentary work.

medically equal a listed severe impairment. (Tr. 17). The ALJ also surmised that Plaintiff could not perform her past relevant work but that she retained the RFC to perform a limited range of unskilled, sedentary work. (Tr. 18). Plaintiff's claim was denied because the ALJ determined that there were other jobs available in the economy for a person of Plaintiff's age, educational level, work experience, and RFC. (Tr. 23-24). Furthermore, the ALJ determined that Plaintiff's testimony to be exaggerated and not fully credible in view of the medical findings. (Tr. 17).

## V. LAW AND ANALYSIS

### A. STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.     FRAMEWORK OF SOCIAL SECURITY DISABILITY DETERMINATIONS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a

finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

    C.    **ARGUMENT**

Plaintiff challenges the ALJ's non-disability finding by asserting that the ALJ improperly discounted her disabling pain caused by fibromyalgia. She argues that this case must be remanded with an award of benefits.

Fibromyalgia is defined as follows:

> A syndrome of chronic pain of musculoskeletal origin but uncertain cause. The American College of Rheumatology has established diagnostic criteria that include pain on both sides of the body, both above and below the waist, as well as in an axial distribution (cervical, thoracic, or lumbar spine or anterior chest); additionally there must be point tenderness in at least 11 of 18 specified sites.

*Stedman's Medical Dictionary*, 27th Ed., 2000, at 671. It is a disease of exclusion and is often diagnosed only after ruling out "other medical conditions which may manifest fibrositis-like symptoms of musculoskeletal pain, stiffness, and fatigue." *Green-Younger v. Barnhart*, 335 F.3d 99, 109 (2d Cir. 2003), quoting *Preston v. Sec. of Health & Human Srvs.*, 854 F.2d 815, 819 (6th Cir. 1988).

Fibromyalgia is also a "mysterious" and "elusive" disease with no known cure. *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 990 (N.D. Ohio 2003), citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Its symptoms are entirely subjective and are thus easy to fake. *Sarchet*, 78 F.3d at 306.

Plaintiff correctly notes that fibromyalgia by itself can be disabling. *See Preston*, 854 F.2d 815. However, Plaintiff has not cited to any cases, and the Court could find none, that have held that a diagnosis of fibromyalgia automatically necessitates a finding of disability. As the *Sarchet* Court noted "some people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority. *Id.* (citations omitted).

The pivotal determination in disability cases involving fibromyalgia is therefore the severity of a claimant's fibromyalgia. Social Security regulations prescribe a two-step process for evaluating this question in a typical case. The plaintiff must establish an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain rising from the condition, or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain. 20 C.F.R. § 404.1529(b) (1995); *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991) (citing *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)). If a plaintiff establishes such an impairment, the ALJ then evaluates the intensity and persistence of the plaintiff's symptoms, such as what precipitates or aggravates the plaintiff's symptoms,

what medications, treatments, or other methods plaintiff uses to alleviate his symptoms, and how the symptoms may affect the plaintiff's pattern of daily living. 20 C.F.R. § 404.1529(c); *Jones*, 945 F.2d at 1369-70.

Courts have recognized, however, that it is difficult to apply this standard in cases involving fibromyalgia. *Swain,* 297 F. Supp. 2d at 990. Generally, this is because no laboratory test can confirm its presence or severity and physical examinations usually yield normal findings such as a full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions. *Preston*, 854 F.2d at 818; *Sarchet*, 78 F.3d at 306. Nevertheless, none of the cases examining this issue have concluded that an ALJ may not cite to the lack of objective, medical evidence when examining a claimant's assertion of disabling pain due to fibromyalgia. Rather, they have emphasized that in such cases there must be a more focused inquiry beyond these traditional objective, medical factors.

In *Preston*, the Sixth Circuit first conducted such a focused inquiry and ultimately reversed the district court's decision finding that the ALJ committed reversible error by rejecting a treating physician's opinion that claimant's fibromyalgia was disabling. The *Preston* Court noted that the physician had "done all that can be medically done to diagnose Preston's fibrositis and to support his opinion of disability." *Preston*, 854 F.2d at 820. The Court detailed certain objective factors that support a finding of disability due to fibromyalgia, including: (1) a referral to a rheumatologist for an evaluation, to a pain clinic, and to a physical therapist; (2) injection of claimant's focal tender points with coritzone or novicaine shots; (3) hospitalization. *Id.*

Drawing upon *Preston*, courts have also recognized the importance of an ALJ's credibility findings in these cases. As the *Swain* Court commented:

> The first alternative test under the second prong of *Duncan* – medical evidence confirming the severity of the alleged pain almost never exists. Analysis under the second alternative test – the medical condition is of such severity that the alleged pain can reasonably be expected to occur. In most cases, the analysis under this second alternative test will consist of diagnostic findings confirming the severity of the impairment and the opinion of a physician as to the limitations that pain caused by such severity will impose. Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints. (Citations omitted). This places a premium, therefore, in such cases on the assessment of the claimant's credibility.

*Swain*, 297 F. Supp. 2d at 990; *see also Brazier v. Sec'y of Health & Human Servs.*, 61 F.3d 903 (6th Cir. 1995) (unpublished); *Potts v. Sec'y of Health & Human Servs.*, 1 F.3d 1241 (6th Cir. 1993 (unpublished).

A review of the record as a whole provides substantial evidence to support the ALJ's determination that Plaintiff's fibromyalgia is not disabling. The medical records during the relevant period contain little objective medical basis for crediting Plaintiff's complaints of disabling symptoms that would preclude unskilled, sedentary work. Examination findings from January 2004 indicate that Plaintiff had no edema in her extremities, normal reflexes and gait, a negative straight leg raising test, and intact sensations. She could squat and stand up from the squatting position despite her claims of pain. (Tr. 125-26). Findings from July 2004 showed that Plaintiff did not have active synovitis, inflammation, tenderness, erythema, or effusion in any

specific joint. She did not have any focal neurological deficits, her reflexes were normal with 5/5 strength, and she had intact sensation and an ability to tandem walk. (Tr. 150-51).

More importantly, the objective, medical findings support the conclusion that Plaintiff's fibromyalgia is not disabling when examined under the *Preston* factors. Significantly, unlike *Preston*, there is no medical opinion evidence indicating that Plaintiff is disabled or is incapable of performing unskilled, sedentary work. In fact, the only opinion evidence in the record suggests that Plaintiff can perform medium-level work. Furthermore, a significant portion of the treatment notes document only routine medical care for her ailments between 2003 and 2004 and no extensive hospitalization. While Plaintiff was referred to a rheumatologist to confirm the diagnosis of fibromyalgia, she was not being regularly treated by one. (Tr. 200-01). Plaintiff's physicians prescribed only mild medication and recommended exercise and weight loss in contrast to referrals to a physical therapist and pain clinic. Her doctors never recommended steroids or epidural injections. As Defendant notes, such conservative treatment is not indicative of severe, disabling symptoms. *See Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 464 (6th Cir. 1987).

Substantial evidence in the record also supports the ALJ's credibility determination. It is in the rare and exceptional case in which every piece of evidence points incontrovertibly towards a decision to deny benefits. There is evidence in the record which, taken in isolation, might suggest that the Plaintiff was totally disabled and that her testimony was fully credible. However, special deference is owed to the credibility findings

of the ALJ, who was the only one who had the opportunity to observe the demeanor of the witness, evaluate what was said and how it was said, and to consider how that testimony fit in with the rest of the medical evidence. Such observation is invaluable and should not be discarded lightly. *Beavers v. Secretary*, 577 F.2d 383 (6th Cir. 1978). *See also Williamson v. Secretary*, 796 F.2d 146, 150 (6th Cir. 1986).

Many of the above-cited factors undermine Plaintiff's credibility: the lack of medical opinion evidence indicating that Plaintiff is disabled or limited to less than unskilled, sedentary work, and Plaintiff's conservative treatment plan. Furthermore, the record reflects that Plaintiff was not always compliant in taking her prescribed medication[5] and would miss scheduled appointments. And, while less persuasive, the record also indicates that Plaintiff prepared light, pre-made meals on a daily basis. She drove her son to and from school and helped him to get bathed and dressed for school, and she helped him with his homework. She would go outside three or four times a day to walk and play with her son.

---

[5] Prior to receiving Medicaid, the records reflect that Plaintiff received samples and refills despite her lack of insurance. (142-43). Plaintiff claimed at the hearing that she was not taking the Darvocet prescribed by Dr. Leon because it was not effective. The most recent medical record from Dr. Leon indicate that Plaintiff had previously been prescribed Darvocet and that Dr. Leon advised Plaintiff to resume taking it. However, there is no indication in that record or any follow-up records that Plaintiff told Dr. Leon that Darvocet was ineffective. (Tr. 146, 150).

She also sat and visited with friends once or twice a week. Taken as a whole, the Court concludes that the ALJ's non-disability finding is supported by substantial evidence.[6]

## RECOMMENDATION

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment (Docket # 8) should be **DENIED**. Defendant's Motion for Summary Judgment (Docket # 13) should be **GRANTED** and the Plaintiff's complaint **DISMISSED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

---

[6] Plaintiff raises no objection to the ALJ's hypothetical posed by the ALJ to the VE. The hypothetical fully incorporates the RFC found by the ALJ. Thus, the hypothetical provided the VE with an accurate description of Plaintiff's exertional and non-exertional impairments. Therefore, the VE's testimony that there exist a significant numbers of jobs in the Michigan for someone of Plaintiff's age, vocational profile, education and RFC is sufficient evidence to support a finding that Plaintiff is not disabled. *Varley*, 820 F.2d at 779.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December 12, 2006                s/ Mona K. Majzoub
                                        **MONA K. MAJZOUB**
                                        **UNITED STATES MAGISTRATE JUDGE**


### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December 12, 2006                s/ Lisa C. Bartlett
                                        **Courtroom Deputy**